UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KENNETH P.,

                        Plaintiff,

v.                                                          5:20-CV-0117
                                                            (ML)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

LEGAL AID SOCIETY OF MID-NEW YORK, INC.         ELIZABETH V. KRUPAR, ESQ.
  Counsel for the Plaintiff
221 South Warren Street, Suite 310
Syracuse, New York 13202

SOCIAL SECURITY ADMINISTRATION                  CHRISTOPHER L. POTTER
  Counsel for the Defendant                     Special Assistant U.S. Attorney
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

MIROSLAV LOVRIC, United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

Plaintiff Kenneth P. ("Plaintiff"), brings this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of the final decision of the Commissioner of Social Security

("Defendant" or "Commissioner"), denying his application for Social Security Disability

Insurance ("SSDI") benefits.  (Dkt. No. 1.)  This case has proceeded in accordance with General

Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of

Social Security benefits.  Currently before the Court are Plaintiff's motion for judgment on the

pleadings (Dkt. No. 7) and Defendant's motion for judgment on the pleadings (Dkt. No. 8).  For

the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and this

case is remanded to the Social Security Administration ("SSA") for a *de novo* review.

I.      **RELEVANT BACKGROUND**

   A.      **Factual Background**

   As of the date of the administrative hearing on April 30, 2019, Plaintiff was 51 years old.

(Administrative Transcript ("T.") 20, 32.)  Plaintiff completed one year of college.  (T. 143.)

Plaintiff was receiving disability compensation from the U.S. Department of Veterans Affairs

("V.A.") with a 30% disability rating due to a bilateral foot condition of the arches that restricted

prolonged walking, standing, and climbing up and down stairs repeatedly.  (T. 20, 35, 269-270.)

   Plaintiff had physical diagnoses that included bilateral "[f]lat foot (pes planus)" and

hallux valgus deformities.  (T. 215.)  In a Progress Note dated October 29, 2018, it was

documented that Plaintiff fell on stairs, causing injuries to his knees, and he began using a cane

to ambulate.  (T. 435.)

   Plaintiff had mental health diagnoses that included schizophrenia (T. 434), antisocial

personality disorder (T. 253-254, 332), a history of major depressive episodes secondary to

situational stressors (T. 254), post-traumatic stress disorder (PTSD) with episodes of flashbacks

(T. 352), anxiety disorder (T. 332), and alcohol use disorder (T. 254).  Plaintiff had psychosis

and struggled with auditory and visual hallucinations that caused him increased distress (T. 459)

and were intrusive (T. 342).  Plaintiff was prescribed Prazosin, Zoloft, Abilify, and Trazadone, to

address his anxiety, depression, and schizophrenia.  (T. 455-456, 480-481.)  Plaintiff reported

that he has not consumed alcohol since January 2018.  (T. 20, 36-39, 49-51.)

Plaintiff last worked in July 2017, installing flooring and previously worked at a cemetery doing landscaping and odd jobs.[1]  (T. 20, 32-35.)  Plaintiff testified at the administrative hearing that he interacts with his girlfriend, his children, V.A. staff, and individuals he knows.  (T. 20, 37, 39-40.)  Plaintiff lives with his girlfriend and has unsupervised visits with his children.  (T. 37, 40.)

### B.    Procedural History

On November 16, 2017, Plaintiff filed an application for SSDI, alleging that he became disabled on July 7, 2017, due to back knees and feet, anti-social disorder, depression, and anxiety.  (T. 15, 55.)  Plaintiff's application was denied initially on February 16, 2018.  (T. 15, 60-61.)  Plaintiff requested a hearing which was held on April 30, 2019, before Administrative Law Judge ("ALJ") John Ramos.  (T. 30.)  The ALJ issued an unfavorable decision on June 11, 2019.  (T. 15-23.)  This became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on December 17, 2019.  (T. 1-3.)

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following eleven findings of fact and conclusions of law.  (T. 17-23.)  First, the ALJ found that Plaintiff last met the insured status requirements for benefits under the Social Security Act on September 30, 2018.  (T. 17.)  Second, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of July 7, 2017, through the date last insured of September 30, 2018.  (*Id*.)  Third, the ALJ found that Plaintiff had severe impairments of bilateral knee

---

[1]    Plaintiff also reported to the Syracuse V.A. Medical Center that he currently works three to four days per week at Best Western Hotels as a handyman "performing repairs, putting up sheet rock, fixing door knobs and what ever needs to be repaired."  (T. 267.)

degenerative joint disease and pes planos/degenerative joint disease of the feet.  (T. 17-19.)  The ALJ found that Plaintiff had non-severe impairments of depression, alcohol abuse, and anxiety.  (*Id*.)  Fourth, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  (T. 19.)  More specifically, the ALJ considered Listings 1.02 (dysfunction of a major weight-bearing joint).  (*Id*.)  Fifth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b).  (T. 20-22.)  Sixth, the ALJ found that Plaintiff was incapable of performing any past relevant work as a floor layer, maintenance repairer, or cemetery worker because Plaintiff is limited to light or sedentary exertional work.  (T. 22.)  Seventh, the ALJ found that Plaintiff was 50 years old, which is defined as a younger individual age (between ages 45 and 49), on the date last insured and that Plaintiff subsequently changed age category to closely approaching advanced age.  (*Id*.)  Eighth, the ALJ found that Plaintiff has at least a high school education and is able to communicate in English.  (*Id*.)  Ninth, the ALJ found that transferability of job skills is not material to the determination of disability because using the medical-vocational rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferable job skills.  (*Id*.)  Tenth, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform.  (T. 22-23.)  More specifically, the ALJ found that given Plaintiff's RFC—a full range of light work—a finding of "not disabled" was directed by Medical-Vocational Rule 202.21 and Rule 202.14.  (*Id*.)  Eleventh, the ALJ therefore, concluded that Plaintiff has not been under a disability from July 7, 2017, through September 30, 2018.  (T. 23.)

**D.     The Parties' Briefings on the Motions**

**1.     Plaintiff's Motion for Judgment on the Pleadings**

Generally, Plaintiff makes three arguments in support of his motion for judgment on the

pleadings.  (*See generally* Dkt. No. 7 at 13-26 [Pl.'s Mem. of Law].)

First, Plaintiff argues that substantial evidence does not support the ALJ's conclusion that

Plaintiff's mental health impairments were non-severe.  (*Id.* at 13-17.)  More specifically,

Plaintiff argues that (1) the medical records indicate that the severity of his mental health

impairments affect his ability to perform basic work activities, as evinced by (a) Plaintiff's

psychologist, who opined that Plaintiff's antisocial personality disorder "results in 'significant

limitations in his occupational functioning.' . . .  [and he] would have marked difficulty in any

job involving recurring interactions with other people," (b) Plaintiff's multiple hospital visits for

mental health treatment of severe mood instability, possible presence of psychosis, anxiety

attacks, and shaking, (c) his schizophrenia diagnosis with auditory and visual hallucinations that

were increasingly intrusive, (d) the treatment notes, which state that Plaintiff would have

difficulty performing basic work activities like using judgment, carrying out simple instructions,

responding to supervision, and dealing with changes in a routine work setting, (e) Plaintiff was

brought to Samaritan Medical Center after being agitated in a crowded V.A. clinic, and (f) the

ALJ noted that Plaintiff was still anxious and depressed after abstaining from alcohol use and

even when he was calm; (2) Dr. Alexander's opinion—which the ALJ found to be persuasive—

regarding Plaintiff's limitations supports the contention that Plaintiff's mental impairments had

more than a *de minimis* effect on his ability to work because Dr. Alexander noted that Plaintiff

would have (a) mild-to-moderate limitations interacting adequately with supervisors, coworkers,

and the public, (b) mild limitations sustaining concentration and performing tasks at a consistent

pace, and (c) mild limitations regulating emotions, controlling behavior, and maintaining well-being; and (3) the ALJ erred by omitting non-exertional limitations from Plaintiff's RFC, which also resulted in an error at step five because the ALJ did not consult with a vocational expert as required by the Second Circuit precedent in *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010). (*Id.*)

Second, Plaintiff argues that the ALJ improperly "cherry-picked" parts of Dr. Lorensen's opinion when formulating the RFC but ignored or excluded other parts entirely.  (*Id.* at 17-22.) More specifically, Plaintiff argues that the ALJ (1) summarized Dr. Lorensen's opinion as containing limitations—which included, *inter alia*, (a) lifting and carrying up to twenty pounds continuously, fifty pounds frequently, and up to one hundred pounds occasionally, (b) no ability to climb ladders or scaffoldings, (c) occasionally performing other postural activities, (d) frequently operating foot controls with either foot, (e) occasionally balancing, stooping, kneeling, crouching, crawling, or climbing stairs and ramps, (f) frequently operating a motor vehicle and being exposed to vibrations, and (g) occasionally being exposed to moving mechanical parts—but did not provide "sound reasoning" for rejecting these limitations and concluding that Plaintiff could "perform the full range of light work"; (2) improperly rejected medical records, which supported the additional limitations that Dr. Lorensen set forth, for example (a) the V.A. determined that Plaintiff would (i) be restricted from prolonged standing, walking, and climbing up and down stairs repeatedly, and (ii) need to stretch intermittently due to his knees, (b) medical records from December 2017, noted that Plaintiff had trouble with prolonged walking and standing on hard surfaces, trouble climbing stairs, and issues with ambulating on uneven ground, (c) medical records from October 2018, noted that Plaintiff had fallen down the stairs that injured both of his knees, which resulted in his use of a cane to

ambulate, (d) medical records from October 2018, noted that Plaintiff had a mild bilateral

antalgic gait, and (e) medical records from November 2018, noted that Plaintiff had bilateral feet

impairments that affected weight bearing on his feet and caused him to stop working; and (3) did

not consult a vocational resource and, instead, relied on the Medical Vocation Rules because the

ALJ determined that Plaintiff's RFC included the full range of light work, but inclusion of the

additional RFC limitations that Dr. Lorensen opined would significantly erode Plaintiff's

occupational base.  (*Id.*)

Third, Plaintiff argues that the ALJ erred in finding that his testimony was inconsistent

with the evidence in the record.  (*Id.* at 22-26.)  More specifically, Plaintiff argues that the ALJ

(1) failed to assess his credibility before making a RFC determination and did not identify which

of his statements that were consistent with the evidence or which were discredited; (2) used

boilerplate language in the conclusion that his "statements concerning the intensity, persistence

and limiting effects of these symptoms are not entirely consistent with the medical evidence and

other evidence in the record for the reasons explained in this decision"; (3) failed to articulate

how (a) his ability to work was evaluated with his symptoms and credibility, (b) his reported

daily activities were inconsistent with the limitations that he and the consultative examiner

alleged, or (c) his reported daily activities translated into an ability to perform substantial gainful

work; (4) failed to consider the seven credibility factors pursuant to 20 C.F.R. §

404.1529(c)(3)(i)-(vii), which also represents a flaw in the ALJ's credibility determination.  (*Id.*)

### 2.    Defendant's Motion for Judgment on the Pleadings

Generally, Defendant makes three arguments in support of his motion for judgment on

the pleadings.  (*See generally* Dkt. No. 8 at 3-13 [Def.'s Mem. of Law].)

First, Defendant argues that reasonable minds can agree with the ALJ that Plaintiff had

no severe mental impairment.  (*Id.* at 3-7.)  More specifically, Defendant argues that (1) Plaintiff

had medical determinations that were non-severe for depression, alcohol abuse, and anxiety

because they—singly or in combination—did "not *significantly* limit [Plaintiff's] physical or

mental ability to do basic work activities" as defined under 20 C.F.R. § 404.1522(a); (2) the ALJ

assessed four areas of Plaintiff's mental functioning: (a) understanding, remembering, or

applying information, and found that Plaintiff had no limitations because, *inter alia*, he reported

one year of college and two periods of military service, (b) interactions with others, and found

that Plaintiff had mild limitations based on, *inter alia*, his social interactions at the V.A.,

vagueness in answering questions, and depressive episodes, (c) concentrating, persisting, or

maintaining pace, and found that Plaintiff had a mild limitation based on consultative examiner

Dr. Alexander's observations during the examination, and (d) adapting or managing oneself, and

found that Plaintiff had a mild limitation based on, *inter alia*, Plaintiff's report that sometimes he

lived with others and other times he was fully independent; (3) while the ALJ considered Dr.

Alexander's consultative psychological examination—which found Plaintiff to have mild-to-

moderate limitations—the ALJ was not required to adopt Dr. Alexander's entire opinion; and (4)

Plaintiff effectively asks the Court to improperly re-weigh the evidence, however, the evidence

that Plaintiff advances regarding his mental health does not necessarily contradict the ALJ's

findings of no significant limitations in Plaintiff's ability to perform basic mental work activities

because (a) the March 2016 evidence "greatly pre-dates his alleged disability onset of July 7,

2017," (b) the January 12, 2018, emergency room visit for psychological symptoms, which was

noted by the ALJ, was shortly followed by alcohol consumption, (c) Plaintiff returned to the

emergency room later in January 2018, but he "was merely given 'a small amount of Ativan' and

discharged," (d) treatment notes from February 2018 through July 2018, were followed by a note

dated September 2018, which reported that Plaintiff was calmer and abstaining from alcohol use

but that Plaintiff's anxiety and depressed mood were present, and (e) while Plaintiff states that he

"was 'still anxious and depressed' in September 2018 . . ., he fails to show that this necessarily

meant significant limitations in basic work activities."  (*Id*.)

Second, Defendant argues that the ALJ properly considered Dr. Lorensen's opinion.  (*Id*.

at 7-10.)  More specifically, Defendant argues that (1) the ALJ found Dr. Lorensen's opinion

persuasive because it was consistent with the medical records; (2) the ALJ is not required to

adopt all of the findings of Dr. Lorensen who provided a non-treating opinion; (3) Dr. Lorensen

did not provide an explanation for the proposed limitations advanced by Plaintiff, and, instead,

"simpl[y] checked boxes on the form"; (4) "Plaintiff concedes that 'there was no evidence to

support . . . a medically determinable impairment' corresponding to the limitation on respiratory

irritants that Dr. Lorensen proposed," and Plaintiff failed to make a *prima facie* case for any

medically determinable impairment that corresponds to other environmental limitations that Dr.

Lorensen proposed; (5) Plaintiff does not show that the kneeling and squatting limitations—

identified by Dr. Lorensen—would deprive him of a meaningful employment opportunity; (6)

since October 2015, Plaintiff has been working as a handyman for Best Western Hotels three to

four days per week; (7) the ALJ was not required to take Plaintiff's subjective statements—that

Plaintiff had pain when he climbed stairs and had knee pain—at face value; (8) the evidence that

Plaintiff presents regarding "trouble with prolonged walking and standing long periods of time

on hard surfaces" were undermined by Dr. Lorensen's opinion that Plaintiff could stand and/or walk eight hours without any restrictions; (9) although Plaintiff was observed using a cane, Dr. Lorensen opined that Plaintiff did not need a cane; (10) Plaintiff's assertion that he stopped working due "in part" to his bilateral foot pain, does not reasonably speak to the RFC, which is the most that Plaintiff can do despite his limitations; and (11) the ALJ was not required to call a vocational expert or obtain vocational expert evidence because "the ALJ was not required to adopt all of Dr. Lorensen's estimations."  (*Id.*)

Third, Defendant argues that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective symptoms.  (*Id.* at 10-13.)  More specifically, Defendant argues that (1) there is substantial evidence to support the ALJ's decision to not accept Plaintiff's statements that are not consistent with the evidence in the record, and unlike the facts presented in *Maldonado v. Comm'r of Soc. Sec.*,[2] "the ALJ's language gives no indication that the ALJ performed any analysis in the wrong order"; (2) the ALJ's use of boilerplate language is no basis for remand because the ALJ supported discounting Plaintiff's reported symptoms by, for example, stating that Plaintiff did not report difficulties with activities of daily living; (3) a significant range of activities of daily living contradicts Plaintiff's disability allegations, both mental and physical; (4) the ALJ relied on "significant mental health examination and treatment notes that did not indicate disabling limitations," and "Dr. Lorensen's conclusion that [P]laintiff 'has no gross physical limitations aside from limitations on kneeling and squatting, and to avoid dust, smoke and other respiratory irritants,'" contradicted Plaintiff's reports of subjective

---

[2]      *Maldonado v. Comm'r of Soc. Sec.*, 12-CV-5297, 2014 WL 537564 *53-54 (E.D.N.Y. Feb. 10, 2014).

symptoms; and (5) Plaintiff's argument that he persistently sought treatment is another improper

request that the Court re-weigh the evidence.  (*Id*.)

## II.  APPLICABLE LEGAL STANDARDS

### A.  Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supports the decision.

*Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v.

Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985

(2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts

whether the proper legal standards were applied, even if the decision appears to be supported by

substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the

determination of whether there is substantial evidence in the record to support the decision.  42

U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the

Court's review, an ALJ must set forth the crucial factors justifying her findings with sufficient

specificity to allow a court to determine whether substantial evidence supports the decision.

*Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010) (Kahn, D.J.); *Ferraris v. Heckler*,

728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence has been defined as 'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams ex

rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more

than a mere scintilla" of evidence scattered throughout the administrative record.  *Featherly*, 793

F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison

Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

   **B.      Standard for Benefits[3]**

   To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2015).  In addition, plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

---

[3]      The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or combination
> of impairments; (3) whether the impairment meets or equals the severity
> of the specified impairments in the Listing of Impairments; (4) based on a
> "residual functional capacity" assessment, whether the claimant can
> perform any of his or her past relevant work despite the impairment; and
> (5) whether there are significant numbers of jobs in the national economy
> that the claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

III.    **ANALYSIS**

    A.    **Whether the ALJ Erred at Step Two When Considering Plaintiff's Mental
        Impairments**

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated in Plaintiff's memorandum of law.  (Dkt. No. 7 at 13-26.)  To those

reasons, the Court adds the following analysis, which is intended to supplement but not supplant

Plaintiff's reasons.

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider*

*v. Colvin*, 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg*

*v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); *see also* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

At step two, the ALJ must determine whether the claimant has a severe impairment that significantly limits a claimant's physical or mental abilities to do basic work activities.  20 C.F.R. § 404.1520(c).  "Although the Second Circuit has held that this step is limited to 'screening out *de minimis* claims' [], the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe."  *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (Suddaby, J.) (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *Colvin v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).  Overall, the claimant retains the burden of presenting evidence to establish severity.  *Taylor*, 32 F. Supp. 3d at 265 (citing *Miller v. Comm'r of Soc. Sec.*, 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008) (Scullin, J.)).

In cases where a mental impairment is present, the ALJ is required to apply a special psychiatric review technique when assessing the severity and impact on the claimant's work-related functioning.  20 C.F.R. § 404.1520a; *Lewis v. Colvin*, 122 F. Supp. 3d 1, 6 (N.D.N.Y. 2015) (Hurd, J.).  The regulations indicate that the technique requires the ALJ to first evaluate the pertinent symptoms, signs, and laboratory findings to determine whether there is a medically determinable mental impairment.  20 C.F.R. § 404.1520a(b)(1).  Second, the ALJ must rate the degree of functional limitation resulting from those impairments by considering all relevant and available clinical signs and laboratory findings, the effects of the claimant's symptoms, and how the claimant's functioning might be affected by factors including chronic mental disorders, structured settings, medications, and other treatment.  20 C.F.R. § 404.1520a(b)(2).  In rating the

claimant's mental impairment, the ALJ must consider multiple issues and all relevant evidence, assessing and rating the claimant's functioning in the four broad areas of activities of daily living: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself; in doing so, the ALJ should consider the extent to which the claimant's impairments interfere with their ability to function independently, appropriately, and effectively on a sustained basis.  20 C.F.R. § 404.1520a(c)(2)-(3).  After rating the claimant's mental impairments accordingly, the ALJ must determine whether the claimant's mental impairments are severe, whether they meet or equal the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, App. I, and, if they do not meet or equal a listing, what effect they have on the claimant's RFC.  20 C.F.R. § 404.1520a(d)(1)-(3). The ALJ is required to incorporate the pertinent findings and conclusions based on the technique into the written decision, showing the significant history (including examination and laboratory findings), and the functional limitations that were considered in reaching a conclusion about the severity of Plaintiff's mental impairments.  20 C.F.R. § 404.1520a(e)(4).

"[T]here is no requirement that the ALJ accept every limitation in an opinion where portions of that opinion are not supported by the evidence."  *Crumedy v. Comm'r of Soc. Sec.*, 16-CV-1261, 2017 WL 4480184, at \*5 (N.D.N.Y. Oct. 6, 2017) (Suddaby, C.J.); *Jennifer W. v. Berryhill*, 18-CV-0064, 2019 WL 1243759, at \*4 (N.D.N.Y. Mar. 18, 2019) (Stewart, M.J.). However, the ALJ "cannot ignore evidence supporting Plaintiff's claim while at the same time accepting evidence that supports his decision," but rather "must consider all evidence in the record."  *Ryan v. Astrue*, 650 F. Supp. 2d 207, 216 (N.D.N.Y. 2009) (Kahn, J.) (quoting *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004); *Armstead ex. rel. Villanueva v. Astrue*, 04-CV-0503, 2008 WL 4517813, at \*18 (N.D.N.Y. Sept. 30, 2008) (Mordue, C.J.)).

15

Here, the ALJ found that Plaintiff had severe physical impairments and non-severe mental impairments of depression, alcohol abuse, and anxiety.  (T. 17-19.)  The ALJ's analysis pursuant to 20 C.F.R. § 404, Subpart P, App. 1, found that Plaintiff's mental impairments singly and in combination, did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities.  (*Id.*)  However, the ALJ omitted from consideration (1) Plaintiff's clinical diagnoses of (a) schizophrenia (T. 434), (b) primary diagnosis of antisocial personality disorder (T. 253-254), and (c) post-traumatic stress disorder (PTSD), which included episodes of flashbacks (T. 352), and (2) medical records that Plaintiff was having "increased psychosis and was struggling with auditory and visual hallucinations," that were causing him increased distress (T. 459) and were intrusive (T. 342).  Moreover, the ALJ failed to consider that on March 30, 2016, a clinical psychologist noted that Plaintiff's antisocial personality disorder diagnosis "results in 'significant limitations in his occupational functioning' . . . [and he] would have marked difficulty in any job involving recurring interactions with other people . . . "  (T. 260.)

As a result, Plaintiff's motion for judgment on the pleadings is granted.  The ALJ's conclusion that Plaintiff's mental impairments were non-severe, is not supported by substantial evidence because the ALJ failed to consider several of Plaintiff's mental health diagnoses and significant portions of his mental health medical records.

**B.**     **Whether the ALJ Erred at Step Four by Failing to Consider Plaintiff's Non-Severe Mental Impairments in Determining Plaintiff's RFC**

In the alternative, after carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Plaintiff's memorandum of law.  (Dkt. No. 7 at 16-17.) To those reasons, the Court adds the following analysis, which is intended to supplement but not supplant Plaintiff's reasons.

"The omission of an impairment at step two may be deemed harmless error, particularly where the disability analysis continues and the ALJ later considers the impairment in her RFC determination."  *Pascal T. v. Berryhill*, 17-CV-1347, 2019 WL 316009, at *7 (N.D.N.Y. Jan. 24, 2019) (D'Agostino, J.) (collecting cases).  However, where "the ALJ does not proceed to discuss Plaintiff's mental impairments or any limitations therefrom in the rest of [his] determination . . . the error is not harmless[] and is a basis for remand."  *Stacy M. v. Berryhill*, 17-CV-0753, 2019 WL 1432764, at *4 (N.D.N.Y. Mar. 29, 2019) (Stewart, M.J.).

Thus, even where "substantial evidence supports the ALJ's finding that [a claimant's] mental impairment was non[-]severe, it would still be necessary to remand . . . for further consideration [where] the ALJ failed to account [for the claimant's] mental limitations when determining her RFC."  *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order) (citing 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe [ ]' . . when we assess your [RFC] . . .")); *see Schmidt v. Colvin*, 15-CV-2692, 2016 WL 4435218, at *13 (E.D.N.Y. Aug. 19, 2016) ("Because the ALJ failed to account for the limitations imposed by Plaintiff's non-severe mental impairments, the Court remands for consideration of those limitations in determining Plaintiff's RFC."); *Jackson v. Colvin*, 14-CV-

17

0055, 2016 WL 1578748, at *4 (W.D.N.Y. Apr. 20, 2016) ("[T]he ALJ failed to properly

consider [the] plaintiff's mental impairments, whether severe or non-severe, throughout the entire

five-step sequential evaluation.  As a result, the ALJ's RFC finding was not supported by

substantial evidence."); *Rookey v. Comm'r of Soc. Sec.*, 14-CV-0914, 2015 WL 5709216, at *3

(N.D.N.Y. Sept. 29, 2015) (Sharpe, J.) (reversing and remanding where the ALJ "fail[ed] to

consider [the plaintiff's] non-severe mental impairments in determining his RFC"); *Salisbury v.

Colvin*, 13-CV-2805, 2015 WL 5458816, at *44 (S.D.N.Y. Sept. 1, 2015) (Dolinger, M.J.) ("the

ALJ erred by not considering whether and to what degree plaintiff's mental impairments may

affect his RFC, however slightly."), *report and recommendation adopted by* 2015 WL 5566275

(S.D.N.Y. Sept. 21, 2015); *Johnson v. Colvin*, 12-CV-1273, 2013 WL 6145804, at *5 (N.D.N.Y.

Nov. 21, 2013) (Sharpe, C.J.) (remanding because "failure to consider [the plaintiff's] mental

impairments and abilities in assessing her RFC is legal error").

      Here, the ALJ erred by failing to consider Plaintiff's mental impairments when

formulating his RFC.  (T. 20-22.)  The ALJ conducted an in-depth analysis regarding Plaintiff's

physical limitations when formulating the RFC.  (*Id*)  However, with respect to Plaintiff's

mental impairments, the ALJ merely mentioned that Plaintiff "report[ed] taking medication for

mental health conditions and . . . report[ed] hearing occasional auditory and visual

hallucinations."  (T. 20.)  The ALJ failed to conduct any analysis regarding Plaintiff's mental

impairments or the impact that those impairments may have had on his ability to work.  (T. 20-

22.)  More specifically, the ALJ's analysis omitted Plaintiff's documented clinical diagnoses of

schizophrenia (T. 434), antisocial personality disorder (T. 253), PTSD with flashbacks (T. 352),

and alcohol use disorder (T. 254).  In addition, the ALJ did not address Plaintiff's reports of

hearing and visual hallucinations.  (T. 36-39, 49-51.)

Moreover, to the extent that the ALJ found Plaintiff had no mental limitations, the ALJ does not provide an explanation to support the basis of that finding. *See Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 741 (S.D.N.Y. 2018) (the ALJ made two references to the plaintiff's mental conditions in the RFC but did not explain how the RFC finding included consideration of the plaintiff's non-severe mental impairments); *Dixon v. Astrue*, 10-CV-5703, 2011 WL 4478493, at *12 (D.N.J. Sept. 26, 2011) ("the ALJ's failure to either consider Plaintiff's depression in evaluating her RFC or to offer a reason for discounting it was unsupported by substantial evidence").

As a result, in the alternative, Plaintiff's motion for judgment on the pleadings is granted because the ALJ improperly failed to consider Plaintiff's non-severe mental impairments when evaluating his RFC.[4]

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 8) is **DENIED**; and it is further

---

[4]     The Court notes that to the extent that Plaintiff's mental impairments significantly limited his range of work, the ALJ also erred at step five by not introducing the testimony of a vocational expert and instead relying on the Medical-Vocation guidelines. "Generally speaking, if a claimant suffers only from exertional impairments, *e.g.,* strength limitations, then the Commissioner may satisfy her burden by resorting to the applicable grids." *Pratts v. Charter*, 94 F.3d 34, 38-39 (2d Cir. 1996). However, where significant non-exertional impairments are present at the fifth step in the disability analysis, "application of the grids is inappropriate." *Bapp v. Bowen*, 802 F.2d 601, 605-606 (2d Cir. 1986). Instead, the ALJ "must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp*, 802 F.2d at 603; *Zabala*, 595 F.3d at 410.

**ORDERED** that the Commissioner's decision denying Plaintiff disability benefits is

**<u>VACATED</u>**; and the case is **<u>REMANDED</u>**, pursuant to Sentence Four of 42 § U.S.C. 405(g) for

proceedings consistent with this Decision and Order.

Dated: March <u>22</u> 2021
       Binghamton, New York

Hon. Miroslav Lovric
United States Magistrate Judge

20